UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

|  |  |  |
|---|---|---|
| CINDY RAE RYAN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:13-cv-1380 |
| | ) | |
| v. | ) | Honorable Phillip J. Green |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | **OPINION** |
| Defendant. | ) | |
| | ) | |

This is a social security action brought under 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying plaintiff's claim for disability insurance benefits (DIB) and Supplemental Security Income (SSI) benefits. On October 29, 2010, plaintiff filed her applications for DIB and SSI benefits, alleging a June 15, 2007, onset of disability.[1] (Page ID 240-52). Her claims were denied on initial review. On July 3, 2012, plaintiff received a hearing before an ALJ, at which she was represented by counsel. (Page ID 70-101). On August

---

[1] Administrative res judicata arising from a decision dated September 10, 2009 (Page ID 106-13), barred any onset of disability date before September 11, 2009. *See Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1232 (6th Cir. 1993). Further, SSI benefits are not awarded retroactively for months prior to the application for benefits. 20 C.F.R. § 416.335; *see Kelley v. Commissioner*, 566 F.3d 347, 349 n.5 (3d Cir. 2009); *see also Newsom v. Social Security Admin.*, 100 F. App'x 502, 504 (6th Cir. 2004). The earliest month in which SSI benefits are payable is the month after the application for SSI benefits is filed. Thus, November 2010 is plaintiff's earliest possible entitlement to SSI benefits.

13, 2012, the ALJ issued her decision finding that plaintiff was not disabled. (ALJ Op., Dkt. 7-2, Page ID 39-51). On November 15, 2013, the Appeals Council denied review (Page ID 30-32), and the ALJ's decision became the Commissioner's final decision.

Plaintiff filed a timely complaint seeking judicial review of the Commissioner's decision. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties voluntarily consented to have a United States Magistrate Judge conduct all further proceedings in this case, including entry of final judgment. (Dkt. 9).

Plaintiff asks the Court to overturn the Commissioner's decision on the following ground: the ALJ "erroneously failed to give appropriate weight to the opinions of the treating sources." (Plf. Brief at 2, Dkt. 10, Page ID 732). The Court finds that plaintiff's argument does not provide any basis for disturbing the Commissioner's decision. A judgment will be entered affirming the Commissioner's decision.

## Standard of Review

When reviewing the grant or denial of social security benefits, this Court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007).

The scope of the court's review is limited. *Buxton v. Halter*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Ulman v. Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive. . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton v. Halter*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Gayheart v. Commissioner*, 710 F.3d 365, 374 (6th Cir. 2013)("A reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

## **The ALJ's Decision**

The ALJ found that plaintiff met the disability insured requirement of the Social Security Act from September 11, 2009, her earliest possible onset of disability date, through December 31, 2009. (ALJ Op. at 3-4, Page ID 41-42). Plaintiff had not engaged in substantial gainful activity on or after September 11, 2009. (*Id.* at 4, Page ID 42). Plaintiff had the following severe impairments: bipolar disorder, personality disorder, and obesity. (*Id.*). Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the listing of impairments. (*Id.*). The ALJ found that plaintiff retained the residual functional capacity (RFC) for a limited range of light work:

> The claimant has the residual functional capacity to perform a limited range of light work as defined in 20 CFR 404.1567(b) and 416.967(b): she cannot lift and/or carry more than 20 pounds occasionally and 10 pounds frequently; she cannot stand and/or walk for more than a total of two hours in an eight-hour workday; she cannot sit for more than a total of six hours in an eight-hour workday; she cannot crouch, crawl, or climb ladders, ropes, or scaffolds; she cannot balance, stoop, kneel, or climb stairs/ramps more than occasionally; and she cannot work with even moderate exposure to unprotected heights or dangerous moving machinery. In addition, she cannot understand, remember, or sustain more than simple job instructions independently; she cannot maintain more than superficial contact with co-workers or the general public more than occasionally; and she cannot tolerate changes in a routine work setting more than occasionally.

(ALJ Op. at 6, Page ID 44). The ALJ found that plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms "are not credible to the extent alleged." (*Id.* at 8, Page ID 46). The ALJ found that plaintiff was unable to perform any past relevant work. (*Id.* at 11, Page ID 49).

The ALJ considered the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age, and with her RFC, education, and work experience, the VE testified that there were a total of approximately 3,500 jobs in Michigan that the hypothetical person would be capable of performing. (ALJ Op. at 12, Page ID 50). The ALJ found that this constituted a significant number of jobs. The ALJ held that plaintiff was not disabled. (*Id.* at 13, Page ID 51).

## Discussion

Generally, the medical opinions of treating physicians are given substantial, if not controlling, deference. *See Johnson v. Commissioner*, 652 F.3d 646, 651 (6th Cir. 2011). "[T]he opinion of a treating physician does not receive controlling weight merely by virtue of the fact that it is from a treating physician. Rather, it is accorded controlling weight where it is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is not 'inconsistent . . . with the other substantial evidence in the case record.'" *Massey v. Commissioner*, 409 F. App'x 917, 921 (6th Cir. 2011) (quoting *Blakley v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009)). A treating physician's opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton v. Halter*, 246 F.3d at 773. An opinion that is based on the

claimant's reporting of her symptoms is not entitled to controlling weight. *See Young v. Sec'y HHS*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Francis v. Commissioner*, 414 F. App'x 802, 804 (6th Cir. 2011) (A physician's statement that merely regurgitates a claimant's self-described symptoms "is not a medical opinion at all.").

Even when a treating source's medical opinion is not given controlling weight, it should not necessarily be completely rejected; the weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability, consistency, specialization, and other factors. *See* SSR 96-2p (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. §§ 404.1527(c), 416.927(c); *Martin v. Commissioner*, 170 F. App'x 369, 372 (6th Cir. 2006).

The Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Commissioner*, 482 F.3d 873, 875-76 (6th Cir. 2007); *see Cole v. Astrue*, 661 F.3d 931, 937-38 (6th Cir. 2011); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). "[T]he procedural requirement exists, in part, for claimants to understand why the administrative bureaucracy deems them not disabled when physicians are telling them that they are." *Smith v. Commissioner*, 482 F.3d at 876; *see Gayheart v. Commissioner*, 710 F.3d at 376.

### **Treating Source – Nancy Devine, M.D.**

Plaintiff's only statement of error is that the ALJ "erroneously failed to give appropriate weight to the opinions of the treating sources." (Plf. Brief at 2, Dkt. 10, Page ID 732). The only treating source to which plaintiff refers is that of her treating

psychiatrist, Nancy Devine, M.D. (*id.*), who had been treating plaintiff on a monthly basis since April 2, 2010. (Page ID 640, 717). Plaintiff argues that, in defining her mental RFC, the ALJ erred in giving too little weight to Dr. Devine's opinions. (Plf. Brief at 2, Page ID 732).

On April 27, 2011, Dr. Devine completed a Mental Residual Functional Capacity Questionnaire in which she diagnosed plaintiff with bipolar II disorder, and she assigned a Global Assessment of Functioning (GAF) score of 45.[2] (Page ID 640). The doctor's clinical findings included depressed mood, irritable mood, and poor ability to cope with stress. She noted that plaintiff's prognosis was "fair." (*Id.*). Although Dr. Devine described plaintiff as "seriously limited" in a number of mental abilities and aptitudes, she failed to provide any explanation for these findings, notwithstanding that the form included a specific request for this information. (Page ID 642-43). Dr. Devine noted that plaintiff demonstrated "limited but satisfactory abilities to interact with the general public, to use public transportation, to carry out short and simple

---

[2]GAF scores are subjective rather than objective assessments and are not entitled to any particular weight. *See Kornecky v. Commissioner*, 167 F. App'x 496, 511 (6th Cir.2006). "GAF is a clinician's subjective rating of an individual's overall psychological functioning. A GAF score may help an ALJ assess mental RFC, but it is not raw medical data. Rather, it allows a mental health professional to turn medical signs and symptoms into a general assessment, understandable by a lay person, of an individual's mental functioning." *Kennedy v. Astrue*, 247 F. App'x 761, 766 (6th Cir.2007); *see Kornecky*, 167 F. App'x at 503 n.7. "Significantly, the SSA has refused to endorse the use of the GAF scale[.]" *Bennett v. Commissioner*, No. 1:07-cv-1005, 2011 WL 1230526, at *3 (W.D. Mich. Mar. 31, 2011). "[T]he latest edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM) no longer includes the GAF scale." *Davis v. Commissioner*, No. 1:13-cv-1556, 2014 WL 4182737, at *8 (N.D. Ohio Aug. 21, 2014); *see Finley v. Colvin*, No. 12-7908, 2013 WL 6384355, at *23 n. 9 (S.D.W.V. Dec. 5, 2013) ("It should be noted that in the latest edition of the [DSM], the GAF scale was abandoned as a measurement tool.").

instructions, to make simple work-related decisions, and to complete a normal workday and workweek." (Page ID 642-43). Plaintiff demonstrated "unlimited or very good" abilities to maintain socially appropriate behavior and to travel in unfamiliar places. (Page ID 643). Dr. Devine noted that plaintiff's deficits had been in effect since 2010. (Page ID 644).

A year later, Dr. Devine completed another Mental Residual Functional Capacity Questionnaire, again diagnosing plaintiff with bipolar II disorder, and assigning a GAF score of 45. (Page ID 717). The doctor's clinical findings included: mood instability, depression, anxiety, poor functioning ability, and fear of being around people. (*Id.*). At this time Dr. Devine reported plaintiff's prognosis as "chronic mental illness." (*Id.*). Although she assessed a number of plaintiff's mental abilities and aptitudes as "seriously limited" or "unable to meet competitive standards," Dr. Devine did not provide any basis or explanation for any of these findings, despite a specific request to do so. (Page ID 719-20). On this occasion, Dr. Devine noted, without explanation, that plaintiff's impairments had been in effect since "age 16." (Page ID 721).

On September 2, 2011, Dr. Devine signed a Michigan Department of Human Services form in which she opined that plaintiff was unable to work "at any job." (Page ID 685). She noted that plaintiff "has chronic mental disorder associated with depression [and] mood lability [and] poor functioning when mood [undecipherable]." (Page ID 686). This two-page form does not include any other explanation or stated reason for the opinion that plaintiff is completely disabled. (*See* Page ID 685-86).

The ALJ afforded "little weight" to Dr. Devine's opinions regarding plaintiff's mental limitations. (ALJ Op. at 10, Page ID 48). The ALJ explained that the opinions were inconsistent with plaintiff's work record, the doctor's own treatment notes, and the other record evidence. (*Id.*). These are appropriate considerations in declining to give controlling weight to Dr. Devine's opinions. *See Gayheart v. Commissioner*, 710 F.3d at 376 ("Treating source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" (quoting 20 C.F.R. § 404.1527(c)(2)).

The ALJ also noted that Dr. Devine's assessments relied upon plaintiff's subjective complaints. (ALJ Op. at 10, Page ID 48). A physician's statement that merely regurgitates a claimant's self-described symptoms "is not a medical opinion at all." *Francis v. Commissioner*, 414 F. App'x at 804. Moreover, no special significance is attached to treating physician opinions regarding the credibility of the plaintiff's subjective complaints, as that is an issue reserved to the Commissioner. *See, e.g., Allen v. Commissioner*, 561 F.3d 646, 652 (6th Cir. 2009).

With respect to Dr. Devine's opinion that plaintiff is unable to work any job, the ALJ correctly noted that the issue of whether plaintiff is disabled within the meaning of the Social Security Act is reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004). A treating physician's opinion that a patient is disabled is not entitled to any special significance. *See* 20 C.F.R. §§ 404.1527(d)(1), (3), 416.927(d)(1), (3); *Bass v. McMahon*,

499 F.3d 506, 511 (6th Cir. 2007); *Sims v. Commissioner*, 406 F. App'x 977, 980 n.1 (6th Cir. 2011) ("[T]he determination of disability [is] the prerogative of the Commissioner, not the treating physician."); *accord Curler v. Commissioner*, 561 F. App'x 464, 471 (6th Cir. 2014).

The ALJ reasonably gave little weight to Dr. Devine's restrictive assessments in the April 2012 Mental Residual Functional Capacity Questionnaire. Despite finding that plaintiff's mental functioning had deteriorated since April 2011, Dr. Devine provided no explanation to support her findings. The Sixth Circuit has held that inconsistencies between a treating source's earlier and later opinions, if not adequately explained, may serve as a basis for rejecting the opinion. *See Stanley v. Sec'y of HHS*, 39 F.3d 115, 118 (6th Cir. 1994); *Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir. 1988); *see also* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.").

Further, there was an internal inconsistency in Dr. Devine's April 2012 mental assessment. She noted, on the one hand, that plaintiff experienced mood lability, depression, anxiety, instability, and poor functioning when she was "not stable"; but, on the other hand, Dr. Devine noted that plaintiff was "stable on [her] current medication." (Page ID 717). Moreover, treatment records indicated that, contrary to Dr. Devine's April 2012 functional assessment, a number of plaintiff's psychological symptoms had improved since 2011. For example, on January 6, 2012, plaintiff reported that she was "doing well," that she was "feeling better physically," and that her "mood [was] stable." (Page ID 723). In March 2012, plaintiff indicated that "she

[was] doing ok"; and plaintiff's daughters told Dr. Devine that plaintiff was "doing better – not yelling as much as before." (*Id.*). Progress notes from April 2012 indicate that plaintiff's mood was better on her current medication. (*Id.*).[3]

This evidence supports the ALJ's conclusion that Dr. Devine's April 2012 assessments were inconsistent with the doctor's own treatment notes. The Sixth Circuit has repeatedly held that inconsistencies between proffered restrictions and the underlying treatment records are "good reasons" for discounting a treating source's opinions. *See, e.g., Hill v. Commissioner*, 560 F. App'x 547, 549-50 (6th Cir. 2014); *Fry v. Commissioner*, 476 F. App'x 73, 75-76 (6th Cir. 2012).

The ALJ's decision to discount Dr. Devine's opinions is further supported by the doctor's apparent willingness to rely simply on plaintiff's subjective assessments and to engage in speculation. For example, in April 2011, Dr. Devine noted that plaintiff's mental impairments began in 2010 (Page ID 644), the year she began treating her. A year later, however, Dr. Devine noted that plaintiff's impairments had been in effect since "age 16." (Page ID 721). Dr. Devine offered no explanation as to how she determined that plaintiff's impairments began eighteen years before she began treating her. Nor did Dr. Devine explain why this April 2012 finding differs so significantly from that of a year earlier. This suggests that Dr. Devine either relied solely on plaintiff's statements or she engaged in speculation.

---

[3]The treatment records to which plaintiff cites for support of Dr. Devine's opinions pre-date the doctor's April 2012 assessment by more than two years. (*See* Plf. Brief at 7-8, Dkt. 10, Page ID 737-38 (citing to records from March 2008 to March 2010)).

At any rate, the finding that plaintiff's mental impairments existed as early as age 16 is contradicted by plaintiff's work history. Plaintiff had worked fairly consistently from January 2000 and December 2006 – at ages 24 to 30. (Page ID 315). That work history included a job at a fabric store, which plaintiff held for nearly three years, from August 2003 to March 2006. (*Id.*).

Moreover, the ALJ's findings concerning plaintiff's mental RFC are consistent with the opinion of the state agency psychological consultant, Wayne Hill, Ph.D. (Page ID 145-52). Dr. Hill reviewed the medical evidence of record on January 13, 2011, including the findings of the examining consultative psychologist, Allison Bush, MS.[4] (Page ID 148-49). Dr. Hill opined that plaintiff had no more than moderate limitations in any area of work-related mental functioning. (Page ID 151-52). "Social Security regulations recognize that opinions from non-examining state agency consultants may be entitled to significant weight, because these individuals are 'highly qualified' and are 'experts in Social Security disability evaluation.'" *Cobb v. Commissioner*, No. 1:12-cv-2219, 2013 WL 5467172, at *5 (N.D. Ohio Sept.30, 2013) (quoting 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i)); *see Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994); *see also Brooks v. Commissioner*, 531 F. App'x 636, 642 (6th Cir. 2013) ("[I]n

---

[4] Ms. Bush examined plaintiff in March 2010, and noted that she was fully oriented, in contact with reality, able to maintain eye contact, organized, logical, and suffered no cognitive or memory deficits. (Page ID 554-56). Ms. Bush assessed plaintiff's GAF score at 51-55. (Page ID 556). She concluded, among other things, that "[plaintiff] appears to be quite bright and capable however her mood instability is seen as restricting her from performing in a competitive work environment. She ... is pursuing an independent psychiatric examination for improved medication management. This may improve the c1aimant's prognosis significantly." (*Id.*).

appropriate circumstances, opinions from State agency medical and psychological consultants ... may be entitled to greater weight than the opinions of treating or examining sources.").

In an effort to bolster Dr. Devine's opinions, plaintiff cites to a letter her mother, Anna Ryan, wrote on July 3, 2012. (Plf. Brief at 9, Page ID 739). In that letter, Ms. Ryan described plaintiff as "mean," noting that it sometimes resulted in violence and, on at least two occasions, cost plaintiff her job. (Page ID 402-03). Ms. Ryan also described plaintiff as depressed and subject to panic attacks when she goes out in public. (Page ID 403-05).

Because she was an "other source," 20 C.F.R. §§ 404.1513(d)(4), 416.913(d)(4), the ALJ was required to consider Ms. Ryan's opinions. *See* SSR 06-03p (reprinted at 2006 WL 2329939 (SSA Aug. 9, 2006) (citing 20 C.F.R. §§ 404.1513, 416.913); *Cole v. Astrue*, 661 F.3d at 939; *Cruse v. Commissioner*, 502 F.3d 532, 541 (6th Cir. 2007)). This is not a demanding standard. It was easily met here. (*See* ALJ Op. at 11, Page ID 49).

The ALJ has "discretion to determine the proper weight to accord opinions from other sources." *Engebrecht v. Commissioner*, 572 F. App'x 392, 398 (6th Cir. 2014). The opinions of "other sources" are not entitled to controlling weight and there is no requirement that the ALJ provide "good reasons" for rejecting such opinions. *See Smith v. Commissioner*, 482 F.3d at 876; *see also Engebrecht v. Commissioner*, 572 F. App'x at 398.

It is evident from the ALJ's opinion that she provided good reasons for discounting Dr. Devine's opinions. Moreover, the record demonstrates that there is substantial evidence to support the ALJ's findings. There was no violation of the treating physician rule.

## **Other Issues Deemed Waived**

In her brief, plaintiff makes perfunctory reference to several other issues. None of these are sufficiently developed to allow the Court to analyze them. "'Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones.'" *United States v. Stewart*, 628 F.3d 246, 256 (6th Cir. 2010) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)); *see United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996); *accord Curler v. Commissioner*, 561 F. App'x at 475 ("[Plaintiff develops no argument to support a remand, and thus the request is waived." (citing *United States v. Elder*, 90 F.3d at 1118)).

In a single-sentence argument, plaintiff contends that the ALJ gave too much weight to the opinions of state agency consultants, Dr. Hill and Daniel Dolanski, D.O. (Plf. Brief at 2, Page ID 732). Plaintiff fails, however, to elaborate in any way on this issue – never mentioning either doctor again. She has waived this issue.

Plaintiff similarly claims that the ALJ gave too much weight to the opinions of the examining consultative psychologist, Allison Bush. (*Id.* at 3, Page ID 733). But the only other reference to Ms. Bush in plaintiff's brief is a complaint that the ALJ "totally

-14-

ignored" Ms. Bush's opinion that plaintiff's "'mood instability is seen as restricting her from performing in a competitive work environment'[.]" (*Id.* at 10, Page ID 740) (citing AR 522 (Page ID 556)).  The inherent contradiction notwithstanding, the issue is waived.

Plaintiff also offers single-sentence arguments contending that the ALJ erred in finding that plaintiff's statements concerning her limitations lacked credibility, and that the ALJ erred in failing to take into consideration plaintiff's obesity.  (Plf. Brief at 3, 10, Page ID 733, 740).  Nowhere does plaintiff provide any analysis or basis for finding that the ALJ erred as to either issue.  Accordingly, they are waived.

## Conclusion

Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Heston v. Commissioner*, 245 F.3d at 534.  The ALJ's conclusion that plaintiff is not disabled is supported by substantial evidence.  Accordingly, it will be affirmed.  A judgment will be entered accordingly.

Dated:   March 31, 2015	/s/  Phillip J. Green            
	United States Magistrate Judge